UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

DEC 21 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| EDALEEN DAIRY, LLC<br>9593 Guide Meridian<br>Lynden, WA 98264<br><br>MALLORIE'S DAIRY, INC.<br>PO Box 720<br>Silverton, OR 97381, and<br><br>SMITH BROTHERS FARMS, INC.<br>PO Box 778<br>Kent, WA 98035<br><br>--PLAINTIFFS,<br><br>VS.<br><br>MIKE JOHANNS, SECRETARY<br>UNITED STATES DEPARTMENT OF<br>AGRICULTURE<br>1400 Independence Ave., S.W.<br>Washington, D.C.,<br><br>--DEFENDANT. | )<br>)<br>)  CIVIL CASE NO.<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CASE NUMBER 1:05CV02442<br>)<br>)  JUDGE: Paul L. Friedman<br>)<br>)  DECK TYPE: TRO/Preliminary Injunction<br>)<br>)  DATE STAMP: 12/21/2005<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Edaleen Dairy, LLC, Mallorie's Dairy, Inc., and Smith Brothers Farms, Inc. (collectively "Northwest Producer-Handlers") for their complaint state as follows:

### SUMMARY OF ACTION

1.  Northwest Producer-Handlers, milk producers who process and market milk directly from their own farms, seek injunctive relief from the Proposed Rule of the Secretary that will repeal the Congressionally approved exemption of producer-handlers from the minimum pricing and pooling provisions of milk marketing orders found at 7 C.F.R. Part 1124. The Proposed Rule, if not enjoined, will impose a severe monetary assessment on

1

Northwest Producer-Handlers and immediately necessitates costly and significant changes to their business structure and operation. The Proposed Rule significantly and irreparably changes these family-owned businesses' customer base, product mix, employment, facilities, ownership and structure. These losses, even now starting to arise, are neither legally reparable nor reversible if the Proposed Rule is later reversed by this Court.

2. "Producer-handlers are dairy farmers who process milk from their own cows in their own plants and market their packaged fluid milk and other dairy products themselves." http://www.ams.usda.gov/dyfmos/mib/prod_hand_dscrp.pdf (June 6, 2005). They are not a producer *and* a handler, but a producer-handler. As an integrated operation, there is no "transaction" from one entity to another to measure, value, or price. Similarly there is no barrier to avoid the risk of one operation affecting the other. The profit or loss, balance sheet, and return on equity are measured for the entire operation and cannot be divided.

3. When a plant and producer are not part of the same entity and the plant is purchasing milk from producers, which the AMAA is designed to regulate, each party is protected from the risks of the other's operations. The handler faces no risks from high milk production costs; if it costs more to produce milk than the minimum price, the plant still pays only the minimum price. This is not the situation with producer-handlers who, the Proposed Rule notwithstanding, continue to assume the full risk of the entire enterprise. The producer-handler absorbs the entire costs of milk production and is fully exposed to the risk of costs in excess of production.

For a producer who has no plant of its own, the Federal milk market blend price is a final price from the market not subject to adjustment based upon the plant's profitability. A producer-handler bears the risk of plant losses or failure of customers to pay.

4. A producer-handler operation cannot both be fully integrated and assume the risks of the entire integrated enterprise while at the same time share the resulting revenue with other producers who are not taking these risks. The result is that the Proposed Rule makes it punitive to continue to operate as an integrated operation at the level of production of these producer-handlers. The Northwest Producer-Handlers are facing the hard decision of reducing their sales by half or more with the attendant loss of profits, employment, and other valuable aspects of a larger operation, or to fully economically separate the two units by closing one, selling one or the other, or reorganizing into two separately owned and operated businesses. All of these have enormous non-recoverable costs.

5. When the Secretary promulgated the current regulations regarding Producer-Handlers, he stated, "In the legislative actions taken by the Congress to amend the AMAA since 1965, the legislation has consistently and specifically exempted producer-handlers from regulation." 63 Fed. Reg. 4802, 4939-40 (January 30, 1998). The only legislation regarding producer-handlers since that statement was an order from Congress to the Secretary to implement regulations he promulgated that continued to exempt producer-handlers. Consolidated Appropriations Act, 2000, Pub.L. 106-113, Div. B, § 1000(a)(8), Nov. 29, 1999, 113 Stat. 1536, 1501A-518.

6. In addition, the Agricultural Marketing Agreement Act ("AMAA"), 7 U.S.C. §§601-674, provides the Secretary with limited authority to establish minimum prices and pooling only, "**for milk purchased from producers** or associations of producers," 7 U.S.C. §608c(5)(A) (emphasis added), or "for the **payment to all producers** and associations of

producers delivering milk to all handlers of uniform prices for all milk so delivered. 7 U.S.C. §608c(5)(B) (emphasis added). Producer-handlers, by Department definition, do not purchase milk but process and market their own farm milk only.

7. Notwithstanding the limited and consistent Congressional authority and the Secretary's practice over 70 years to exempt producer-handlers, on December 19, 2005 the Secretary issued a Proposed Rule which repeals the exemption Congress has ordered for the Northwest Producer-Handlers and will impose on them a substantial assessment for milk they did not purchase but already own. ("Proposed Rule") See, 70 Fed. Reg. 74166 (December 14, 2005) (Attached as Exhibit "A").

8. Northwest Producer-Handlers seek a declaration that the administrative repeal of the statutorily mandated producer-handler exemption and the assessment of minimum prices and pooling exceeds the authority of the Secretary under the AMAA and other acts of Congress; and that the Secretary's actions are unlawful and should be set aside by the Court pursuant to the Administrative Procedure Act, 5 U.S.C. §706, on the grounds that it was promulgated in a manner that: (1) violated an express prohibition of Congress which the Secretary had recently acknowledged, (2) exceeded the authority of the Secretary in setting prices for milk and establishing pools, or (3) was otherwise arbitrary, capricious and not in accordance with longstanding and accepted law.

9. Northwest Producer-Handlers are subject to the loss of significant pecuniary interests as producers if the Proposed Rule is implemented.

10. Northwest Producer-Handlers are currently facing and will continue to face imminent and permanent irreparable injury if injunctive relief (temporary, preliminary, and permanent) is not granted.

11. The injury to Northwest Producer-Handlers includes, but is not limited to, irretrievable loss of customers, loss of income, change in business structure, and substantial loss of business assets.

## JURISDICTION AND VENUE

12. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337 as this action arises under the laws of the United States and because the complaint is based exclusively upon interpretation of federal law (to wit: Agricultural Marketing Agreement Act, 7 U.S.C. §§601-674; the Administrative Procedure Act, 5 U.S.C. §701 *et seq.;* Consolidated Appropriations Act, 2000, Pub.L. 106-113, Div. B, § 1000(a)(8), Nov. 29, 1999, 113 Stat. 1536, 1501A-518; the Food, Agriculture, Conservation, and Trade Act of 1990, §115, Publ. L. 101-624, §115, 104 Stat. 3359).

13. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§2201 in order to settle an actual controversy between the Northwest Producer-Handlers and the Defendant involving an interpretation of federal law and regulations.

14. Pursuant to 28 U.S.C. §2202 and Fed. R. Civ. P. 57, this Court is authorized to grant relief in addition to the declaration of the rights of the parties.

15. Venue in this Court is proper because an agency of the United States is a defendant and its primary office is located in the District of Columbia. 28 U.S.C. §§1391(b)&(e).

## PARTIES

16. Edaleen Dairy, LLC ("Edaleen") is a Washington state limited liability company that produces milk on its farms and processes its raw milk into bottled milk, ice cream, and other dairy products for sale direct to consumers, milk dealers or retailers. Its operations are located near Lynden, Washington. Edaleen has been operating as a producer-handler since 1975 and has, prior to this date, been exempt from the minimum pricing and

pooling provisions of the federal milk marketing orders. Edaleen is now being operated by the children of its founders, Ed and Aileen Brandsma.

17. Mallorie's Dairy, Inc. ("Mallorie's") is an Oregon corporation that produces milk on its farms and processes the milk into bottled milk and other dairy products for sale direct to consumers, milk dealers or retailers. Its operations are located at Silverton, Oregon. Mallorie's has been operating as a producer-handler since 1956 and has, prior to this date, been exempt from the minimum pricing and pooling provisions of the federal milk marketing order. Mallorie's is now being operated by the children of its founder, Bob Mallorie.

18. Smith Brothers Dairy, Inc. ("Smith Brothers") is a Washington state corporation that produces milk on its farms and processes the milk into bottled milk and other dairy products for sale direct to consumers, to milk dealers or retailers. Its farm operations are located in eastern Washington state and its processing plant and offices are located at Kent, Washington. It has been operating as a producer-handler since the 1920's and has, prior to this date, been exempt from the minimum pricing and pooling provisions of the federal milk marketing orders. Smith Brothers Farms is now operated by the grandchildren of its founder, and some great-grandchildren are involved in aspects of the business.

19. Defendant, Mike Johanns is the Secretary of the United States Department of Agriculture and is authorized by law to promulgate and administer regulations under the AMAA.

20. The Secretary has under color of that statute issued the Proposed Rule and has stated an intent to implement and administer it.

21. This suit is brought against him in his official capacity as Secretary of Agriculture.

## CURRENT STATUS QUO OF PRODUCER-HANDLERS

22. Northwest Producer-Handlers are currently operating under the definition of "producer-handler" which is found at 7 C.F.R. §1124.10.

23. Each of the named Northwest Producer-Handlers is a "producer-handler" because they do not purchase milk but instead process and market their own milk to customers and other end buyers. *See* 7 C.F.R. § 1124.10.

24. As producer-handlers, they are currently exempt from the obligations to pay minimum prices and to participate in the pooling of the income of their producer function with other producers.

25. The Secretary has explained the status of producer-handlers as follows:

> Exemption from the pooling and pricing provisions of the orders essentially means that the minimum class prices established under the orders that handlers must pay for milk are not applicable to producer-handlers and producer-handlers receive no minimum price protection from surplus milk disposed of within either order's marketing area.

Proposed Rule, 70 Fed. Reg. at 74167-68.

26. Northwest Producer-Handlers, according to the Secretary, "[Enjoy] keeping the entire value of their milk production disposed of as fluid milk products in the marketing area to themselves and do not share this value with other dairy farmers whose milk is pooled on either of the two orders." *Id.*

27. The Proposed Rule will remove the decades long statutorily mandated exemption and require the Northwest Producer-Handlers for the first time "to account to the pool for their uses of milk at the applicable minimum class prices and pay the difference between their use-value and the blend price of the order to the order's producer settlement fund." *Id.*

## HISTORY OF CURRENT REGULATIONS

28. Over the seventy years of Federal milk marketing orders, the Secretary has consistently exempted producer-handlers from the minimum pricing and pooling provisions of the various milk marketing orders.

29. In 1990, Edaleen Dairy and Smith Brothers Farms marketed milk within the predecessor order to the current Order 124. Under the terms of that order, they had to use only milk produced on their farms except they could purchase up to 5,000 pounds, or approximately 450 gallons, per month from farmers and still remain exempt.

30. In 1990 Mallorie's Dairy was marketing milk within one of the predecessor orders to Order 124. Under the terms of that order Mallories had to use only milk produced on their farms except they could purchase up to 5,000 pounds, or approximately 450 gallons, per month from farmers and still remain exempt.

31. In 1990, Congress made some changes to the AMAA but maintained the legal status of producer-handlers stating:

> The legal status of Producer-handlers of milk under the Agricultural Adjustment Act (7 U.S.C. 601 *et seq.*), reenacted with amendments by the Agricultural Marketing Agreement Act of 1937, shall be the same after the amendments made by this title [Title I of Pub.L. 101-624 Nov. 28, 1990, 104 Stat. 3374] take effect as it was before the effective date of the amendments.

Food, Agriculture, Conservation and Trade Act of 1990, Publ. L. 101-624, Section115. There was no qualification to the exemption.

32. In 1996, the Congress directed the Secretary to undertake a major revision of the Federal Milk Marketing Orders. Federal Agriculture Improvement and Reform Act of 1996, 7 U.S.C. §7253(a) (Supp. 1999) ("FAIR Act")

33. The Secretary was requested during the course of Federal Order Reform to address the producer-handler exemption.

8

34. During that rulemaking process, the Secretary considered the legal status of the producer-handler exemption and made this statement in the Recommended Decision:

> In the legislative actions taken by the Congress to amend the AMAA since 1965, the legislation has consistently and specifically exempted producer-handlers from regulation. The 1996 Farm Bill, unlike previous legislation, did not amend the AMAA and was silent on continuing to preserve the exemption of producer-handlers from regulation. However, past legislative history is replete with the specific intent of Congress to exempt producer-handlers from regulation. If it had been the intent of Congress to remove the exemption, Congress would likely have spoken directly to the issue rather than through omission of language that had, for over 30 years, specifically addressed the regulatory treatment of producer-handlers. Since producer-handlers are intended to be exempt from most regulation, some means must be provided to determine and to verify producer-handler status. Accordingly, the market administrator is provided with the authority to require reports and other information deemed appropriate to determine that an entity satisfies the requirements of producer-handler status. Such authority is currently provided in the orders and should continue.

63 Fed. Reg. 4802, 4939-40 (January 30, 1998).

35. After receiving additional public comments, in April of 1999, the Secretary issued a proposed rule.

36. Among the comments received were proposals to limit the producer-handler exemption from the pooling and pricing provisions of the Federal Milk Marketing Order.

37. Despite these requests, in the proposed rule of April 2, 1999, the Department denied the requests and stated:

> It has been a long-standing policy to exempt from full regulation many of those entities that operate as both a producer and a handler....Some modifications have been made to the producer-handler provisions in the consolidated orders for standardization. However, no changes have been made that would intentionally regulate a producer-handler that is currently exempt from regulation under their current operating procedures....**One of the public comments received proposed that the exemption of producer-handlers from the regulatory plan of milk orders be eliminated. This proposal is denied.**

64 Fed.Reg. 16135 (April 2, 1999) (emphasis added).

38. The recommended milk marketing orders all continued the producer-handler exemption and, as a matter of regulation, reduced the limitations on producer-handlers.

39. There was widespread disagreement with that proposed rule and the Congress stepped in, ordered certain amendments related to milk pricing, but otherwise ratified and affirmed the Proposed Rule and ordered its implementation including the exemption of producer-handlers. H.R. 3428, the Legislative Directive, as part of Consolidated Appropriations Act, 2000, Pub.L. 106-113, Div. B, §1000(a)(8) [§2], Nov. 29, 1999, 113 Stat. 1536, 1501A-518 (2000 Act). Congress then ordered the Secretary to implement the order reform decision.

40. There are currently ten (10) Federal Milk Marketing Orders being administered by the Secretary throughout the United States. These orders are described at 7 C.F.R. Parts 1001 through 1131. Among these orders is the Pacific Northwest Milk Marketing Order found at 7 C.F.R. Part 1124. All three Northwest Producer-Handlers operate in this marketing area.

41. The Congressionally affirmed regulation regarding the Northwest Producer-Handlers is found at 7 C.F.R. §1124.10. That regulation essentially provides that in order to qualify as a producer-handler, a producer must process and market only milk from its farms and those farms must market its milk through its own plant. The regulations now permit producer-handlers to purchase up to 150,000 pounds of milk (approximately 13,500 gallons) without losing the exemption. 7 C.F.R. § 1124.10(c)(2).

## OTHER RELEVANT STATUTORY BACKGROUND

42. The Secretary's authority under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §601 *et seq.* (AMAA), to regulate producer-handlers exists only through the express exemption of producer-handlers by Congress.

43. The basic mechanisms used in the FMMO system are the establishment and enforcement of classified minimum prices which the handlers must pay for milk purchased from producers or their cooperatives and the operation of a "pool" of the proceeds of such purchases to be shared equitably by those producers selling milk to the handlers.

44. The pooling mechanism allows every dairy farmer who sells milk to handlers to receive a uniform minimum price (called the "blend price" or "uniform price") regardless of the specific handler who purchases from the farmers or the use to which the handler puts that farmers' production.  7 U.S.C. §608c(5)(A),(D) and (18).

45. These regulations arise out of specific and limited authority granted the Secretary by Congress. The relevant provisions of the AMAA provide:

> (5) <u>Milk and its products; terms and conditions of orders</u>
> In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, ***and ...no others***:
>
> (A) Classifying milk in accordance with the form in which or the purpose for which it is used, and fixing, or providing a method for fixing, minimum prices for each such use classification ***which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers.*** Such prices shall be uniform as to all handlers, subject only to adjustments for (1) volume, market, and production differentials customarily applied by the handlers subject to such order, (2) the grade or quality of the milk purchased, and (3) the locations at which delivery of such milk, or any use classification thereof, is made to such handlers. * * *
>
> (B) Providing:
> (i) for the payment to all producers and associations of producers delivering milk to the same handler of uniform prices for all milk delivered by them: * * *
> (ii) for the payment to all producers and associations of producers delivering milk to all handlers of uniform prices for all milk so delivered, irrespective of the uses made of such milk by the individual handler to whom it is delivered; subject, in either case, only to adjustments for (a) volume, market, and production differentials customarily applied by the handlers subject to such order, (b) the grade or quality of the milk delivered, (c) the locations at which delivery of such milk is made ***.

> (C) In order to accomplish the purposes set forth in paragraphs (A) and (B) of this subsection, providing a method for making adjustments in payments, as among handlers (including producers who are also handlers), to the end that the total sums paid by *each handler shall equal the value of the milk purchased by him* at the prices fixed in accordance with paragraph (A) of this subsection.

7 U.S.C. §608c(5) (emphasis added).

46. Since producer-handlers, by definition, already own milk produced on their farms, they do not purchase milk from producers. Since the Secretary is limited to only establishing minimum prices for "milk purchased from producers" the provisions of 7 U.S.C. §608c(5)(A) cannot apply and the Secretary heretofore has not applied them.

47. Without the act of purchasing milk, the provisions of 7 U.S.C. §608c(5)(C) cannot apply to producer-handlers, either.

48. Producers who sell milk to handlers, are protected by the creation of these minimum prices based on such use and receive a uniform price regardless of the use of their milk.

49. For both practical and fundamental legal reasons, producer-handlers cannot "pay" themselves a minimum price and therefore any attempt to regulate producer-handlers for such non-existent "purchases" is legally indefensible and contradicts the plain language of the AMAA.

## RULEMAKING HISTORY LEADING TO THIS CASE

50. This case originates from hearings wherein the Secretary, at the request of numerous cooperatives and plants, considered changes that would impose minimum pricing and pooling provisions on producer-handlers who do not purchase milk and have heretofore been exempted from minimum pricing and pooling regulation.

51. The rulemaking hearing convened in September 2003 at Phoenix, Arizona, and was completed after hearings in November 2003 in Seattle, Washington, and January 2004 in Alexandria, Virginia.

52. During the hearing, John Mykrantz, a representative of the Department, testified that producer-handlers do not purchase milk from producers.

53. On April 13, 2005, the Secretary issued a Recommended Decision that, if subsequently proposed and adopted as a rule, would repeal the exemption of producer-handlers from an obligation not to pay minimum prices and, instead, order them to pay an assessment to the other producers in the orders who do not operate their own processing plants a sum equal to the difference between the producer-handler's classified minimum pricing and the uniform price announced by the Secretary. 70 Fed. Reg. 19636 (April 13, 2005) ("Recommended Decision").

54. The Northwest Producer-Handlers objected and argued that the Secretary had no such authority to repeal the producer-handler exemption.

55. On December 14, 2005, the Secretary issued a Proposed Rule calling for the imposition on Northwest Producer-Handlers of this substitute payment to subsidize other dairy producers. Proposed Rule.

56. According to law, the Proposed Rule must be approved by at least two-thirds of the milk or two-thirds of the producers in the marketing order. 7 U.S.C. §608c(9) The Proposed Rule has ordered that a referendum be had and completed by January 13, 2006. Proposed Rule, 70 Fed. Reg. at 74188 - 74189.

57. Milk marketing cooperatives bloc vote all of their members and production. 7 U.S.C. §608c(14). Based upon testimony at the hearing and general knowledge, proponents of the limitation on producer-handlers exceed the two-thirds required for adoption and implementation of the Proposed Rule. It is expected that the Proposed Rule will be approved by producers and made a Final Rule in the immediate future.

58. Because the referendum is to approve an order which the Secretary has no authority to promulgate, the Referendum is illegal.

59. The issuance of this Proposed Rule makes this case necessary.

### NEED FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

60. Northwest Producer-Handlers are now being irreparably harmed as the result of the announcement of the Proposed Rule and the injury will continue and multiply unless and until an injunction is issued to stop the implementation and enforcement of any regulations that impose minimum pricing or pooling provisions upon the Northwest Producer-Handlers who do not purchase milk from other farmers as required by the AMAA.

61. Based upon testimony at the hearing, the assessment will be in excess of one million dollars per year per plaintiff but plaintiffs will receive nothing in return for that assessment.

62. More importantly, in order to avoid or mitigate this confiscatory payment, Northwest Producer-Handlers will have to irretrievably alter their operations, selling or disposing of some assets, separating the farm units from the processing units, terminating employee contracts, reducing herd sizes, or declining sales to some customers.

63. All of this would be avoided by an Order of immediate injunctive relief to stay enforcement of the Proposed Rule and changes to producer-handler status.

64. Injury from the Proposed Rule is already being felt by the Northwest Producer-Handlers. For example, some customers have already stopped purchasing from Northwest Producer-Handlers because of the assumption fostered by the proponents of the change that the Northwest Producer-Handlers will not survive as operating businesses or will have to dramatically increase the cost of their products.

14

65. Unless the Proposed Rule is enjoined, which stated repeatedly that producer-handlers undersell the market, competitors will continue to use these statements to argue that Producer-Handlers will have to substantially increase milk prices to their customers in order to frighten those customers into changing suppliers from the Northwest Producer-Handlers.

66. Although the regulation will not be effective until milk produced in January 2006 at the earliest, and more likely February or March of 2006, absent an immediate order Northwest Producer-Handlers will be required to anticipate the effectiveness of the Decision by making costly and irreversible decisions now.

67. For all practical purposes, the Proposed Rule is now effective for the operations of these Northwest Producer-Handlers and immediate relief is required in order to avoid further losses and damages.

68. Indeed, for the Northwest Producer-Handlers a wait of even twenty days for an expedited hearing on a Preliminary Injunction irreparably harms their businesses.

69. The damage to Northwest Producer-Handlers cannot be recovered fully in the marketplace, nor can this Court in a subsequent order compel the Secretary or others to reimburse the Northwest Producer-Handlers for those losses.

70. Moreover, a balance of equities favors issuing an injunction because the Secretary's Final Rule will permanently harm Northwest Producer-Handlers and their members. Also, enjoining the Final Rule will preserve the decades old status quo and will further the stated Congressional policy of exempting producer-handlers from regulation.

71. An injunction also will be in the public interest since continuation of the status quo will provide an adequate supply of good and wholesome milk to the consuming public at a

reasonable cost and in accordance with the law. Besides compliance with the law is always in the public interest.

72. An injunction is needed immediately in order to preserve the status quo pending resolution of these claims.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### [Declaratory Relief]

73. Plaintiffs incorporate, as if fully rewritten herein, all allegations made in the previous paragraphs of this complaint.

74. Plaintiffs are entitled to a judgment declaring that the actions of the Secretary in repealing the exemption from the minimum pricing and pooling provisions of the Federal milk marketing orders and imposing an assessment on the Northwest Producer-Handlers as found in the Proposed Rule is void because the Secretary exceeded his statutory authority, removed the exemption of the producer-handlers in violation of Publ. L. 101-164, and otherwise acted in an arbitrary and capricious manner in violation of the Administrative Procedure Act, 7 U.S.C. §608c.

### SECOND CAUSE OF ACTION

### [Preliminary and Permanent Injunctive Relief]

75. Plaintiffs incorporate, as if fully rewritten herein, all allegations made in the previous paragraphs of this Complaint.

76. Plaintiffs are entitled to a temporary restraining order and a preliminary and a permanent injunction prohibiting the Secretary from conducting the referendum on the proposed rule and from otherwise implementing the substitute payment provision for Northwest Producer-Handlers on milk that they did not purchase.

77. This Court should strike the Proposed Rule and Order the Secretary to withdraw all opinions issued on the illegal rule and to terminate the proceedings based upon the fact that he is without Congressional authority to repeal the exemption of producer-handlers from minimum pricing and pooling and imposing an assessment on them.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs hereby pray for relief as follows:

A) For an Order declaring that the Secretary, in issuing the regulations in the Proposed Rule, 70 Fed. Reg. 74166 (December 14, 2005) and in so far as they repeal the exemption of producer-handlers from the minimum pricing and pooling obligations of the Federal milk marketing orders or obligate Plaintiffs to pay any assessment to the producer settlement fund on milk they have not purchased but is instead produced on their farms, acted arbitrarily, capriciously, and contrary to law and that such regulations are null and void.

B) For an Order temporarily, preliminarily and permanently enjoining the Secretary, his agents and attorneys and those persons in active concert or participation with them who receive actual notice of the order from repealing the exemption of producer-handlers from the minimum pricing and pooling provisions of the Federal milk marketing orders and from implementing the provisions imposing any obligation for Northwest Producer-Handlers to make any payment to the producer settlement fund on milk they have not purchased but is instead produced on their farms, in compliance with the Food, Agriculture, Conservation and Trade Act of 1990, §115; the AMAA, 7 U.S.C.§608c; and the APA, 5 U.S.C. §§ 556 et seq. and require the Secretary to issue a rule in conformance thereto.

C) For a judgment for interest, attorneys fees, costs, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

BENJAMIN F. YALE, (D.C. Dist. Ct. OH0008)
KRISTINE H. REED (D.C. Dist. Ct. OH0007)
RYAN K. MILTNER (D.C. Dist. Ct. OH0006)
Yale Law Office, LP
527 North Westminster Street
P.O. Box 100
Waynesfield, Ohio 45896
419-568-5751
Fax 419-568-6413
ATTORNEYS FOR PLAINTIFFS