FILED

DEC 2 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

EDALEEN DAIRY, LLC )
MALLORIE'S DAIRY, INC., and )
SMITH BROTHERS FARMS, INC )

        --PLAINTIFFS,
           VS.

MIKE JOHANNS,
SECRETARY OF AGRICULTURE, )
UNITED STATES DEPARTMENT OF )
AGRICULTURE )
                    )
        --DEFENDANT.      )

CASE NUMBER 1:05CV02442

JUDGE: Paul L. Friedman

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 12/21/2005

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
## AND/OR PRELIMINARY INJUNCTION AND FOR EXPEDITED HEARING

Plaintiffs, Edaleen Dairy, LLC., Mallorie's Dairy LLC, and Smith Brothers Dairy, Inc.

(collectively "Northwest Producer-Handlers"), by and through their undersigned counsel,

respectfully move this Court for a Temporary Restraining Order and/or Preliminary Injunction and

for Expedited Hearing (the "Motion"). As more fully set forth in the accompanying Memorandum,

Northwest Producer-Handlers request that this Court: (i) enter an Order granting a Temporary

Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 65 .1(a) of

the Local Rules for this Court; (ii) enter an Order for Preliminary Injunction pursuant to Rule 65 of

the Federal Rules of Civil Procedure and Rule 65.1(c) of the Local Rules of this Court; and (iii) enter

an order granting an expedited hearing on the request for Preliminary Injunction pursuant to Rule

71.(f) of the Local Rules for this Court.

Northwest Producer-Handlers seek to enjoin the Secretary of the United States Department of Agriculture (the "Secretary") from implementing a Proposed Rule to the Federal Milk Marketing Order for the Pacific Northwest, 7 CFR Part 1124, which eliminates the Congressionally mandated exemption of producer-handlers from the minimum pricing and pooling provisions of the various milk marketing orders. Northwest Producer-Handlers seek to maintain the status quo regarding the definition of producer-handlers now found at 7 C.F.R. §1124.10 (2005) until this Court has time to fully review their challenges to the Secretary's conduct. The need is immediate as the Northwest Producer-Handlers are today facing challenges to adapt to a market already responding to the Proposed Rule. The amendments at issue are contained in 70 Fed. Reg. 74166 (December 14, 2005) (the "Proposed Rule").

Unless enjoined by this Court, the Plaintiffs will voluntarily or involuntarily change their businesses irreversibly and without the ability to recover; the market will respond to the Proposed Rule reducing the viability of the Northwest Producer-Handlers business operations; the Secretary will implement the Proposed Rule in the immediate future; and the new producer-handler definition will thereafter operate to further harm the Northwest Producer-Handlers. In the meantime, the market responding to the Proposed Rule in anticipation of full implementation and to the detriment of the Northwest Producer-Handlers. The Northwest Producer-Handlers are now forced to make irreversible decisions at great cost. An injunction would protect not only the status quo of the regulations but the status quo market as well.

As more fully explained in the accompanying Memorandum of Points and Authorities and supported by Declarations of Richard Mallorie, Teresa Kilgus, Charles Flanagan, Dr. Ronald

2

Knutson, Duane Brandsma, and Scott Highland, the Northwest Producer-Handlers are entitled to the relief requested herein because:

    1.    The Secretary exceeded his authority under § 608c(5) of the Agriculture Marketing Agreement Act of 1937, as amended, 7 U.S.C. §§ 601 *et seq.* (the "AMAA"), Food, Agriculture, Conservation, and Trade Act of 1990, §115, Publ. L. 101-624 §115, 104 Stat. 3359 §115, and Consolidated Appropriations Act, 2000, Pub.L. 106-113, Div. B, §1000(a)(8) [§2], Nov. 29, 1999, 113 Stat. 1536, 1501A-518 by repealing the exemption of producer-handlers from the pricing and pooling provisions of the Federal milk marketing orders.

    2.    The Secretary exceeded his authority to remove the exemption from minimum pricing and pooling under the AMAA after Congress repeatedly enacted statutes, none of which have been abrogated, repealed, or amended, that the "legal status of producer-handlers [i.e., as exempt from pricing and pooling] shall remain unchanged."

    3.    The decision of the Secretary is arbitrary and capricious and not in accordance with the law.

As described in the accompanying Memorandum, a temporary restraining order and/or a preliminary injunction is necessary because: (1) Northwest Producer-Handlers will suffer irreparable harm unless the Secretary is enjoined and/or restrained from implementing a limit on producer-handlers in the milk marketing order; (2) Northwest Producer-Handlers are likely to succeed on the merits of their claims; (3) neither the Secretary nor his agents will suffer irreparable harm if the Secretary is restrained and/or enjoined; and (4) the public interest will be served if the Court maintains the status quo with respect to the status of producer-handlers until it has resolved the underlying claims presented in the Northwest Producer-Handlers' Complaint.

Northwest Producer-Handlers face imminent, permanent and irreparable injury if the Secretary implements the Final Decision. Even now, in anticipation of implementation, the Northwest Producer-Handlers are suffering irreparable loss of customer base, employees, and other necessary aspects of a continuing business. Accordingly, good cause exists to set a hearing on the Motion at the earliest possible time.

Northwest Producer-Handlers' counsel has contacted opposing counsel at the Federal Programs Branch, U.S. Department of Justice, pursuant to Local Rule 7.1(m) and Defendant did not consent to any of the relief requested in this Motion.

WHEREFORE, Northwest Producer-Handlers, pray for relief as follows: (i) for entry of an Order that temporarily enjoins the Secretary, his officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order, from implementing, enforcing or otherwise administering provisions for repealing the exemption of producer-handlers from minimum pricing and pooling obligations at 7 C.F.R. Parts 1000-1131 as detailed in 70 Fed. Reg. 74166 (December 14, 2005); and (ii) for entry of an Order that enjoins, temporarily until the final determination of this action, the Secretary, his officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of this Order, from repealing the exemption of producer handlers to minimum pricing and pooling obligations at 7 C.F.R. Parts 1000-1131 70 Fed. Reg. 74166 (December 14, 2005); and (iii) for entry of an Order granting an expedited hearing on this Motion; and (iv) for such other relief the court may deem appropriate.

Respectfully submitted,

BENJAMIN F. YALE (D.C. Dist. Ct. Bar No. OH0008)
KRISTINE H. REED (D.C. Dist. Ct. Bar No. OH0007)
RYAN K. MILTNER (D.C. Dist. Ct. Bar No. OH0006)
YALE LAW OFFICE, LP
527 North Westminister Street
P.O. Box 100
Waynesfield, OH 45896
Telephone:  (419) 568-5751
Facsimile:  (419) 568-6413

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDALEEN DAIRY, LLC                          )
MALLORIE'S DAIRY, INC., and                 )
SMITH BROTHERS FARMS, INC                   )
                                            )
                                            )         CIVIL CASE NO.
    --PLAINTIFFS,                           )
                                            )
         VS.                                )
                                            )
MIKE JOHANNS,                               )
SECRETARY OF AGRICULTURE,                   )
UNITED STATES DEPARTMENT OF     )
AGRICULTURE                                 )
                                            )
    --DEFENDANT.                            )


MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND/OR  PRELIMINARY INJUNCTION AND FOR EXPEDITED HEARING

BENJAMIN F. YALE
KRISTINE H. REED
RYAN K. MILTNER
YALE LAW OFFICE, LP
527 North Westminister Street
P.O. Box 100
Waynesfield, Ohio 45896
(419) 568-5751
Fax:  (419) 568-6413
ben@yalelawoffice.com

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
    MOTION FOR TEMPORARY RESTRAINING ORDER
    AND/OR  PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Northwest Producer-Handlers are entitled to a Temporary Restraining Order and/or a
     Preliminary Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Producer-handlers will succeed on the merits because the Secretary exceeded
        his authority under the AMAA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.    In issuing the Proposed Rule, the Secretary has usurped the legislative
             power of Congress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.    Congress has repeatedly preserved the exempt status of producer-
             handlers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.    Northwest Producer-Handlers Will Suffer Severe And Irreparable Injury
        Unless the Secretary Is Restrained Immediately From Implementing the
        Proposed Rule. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    C.    The issuance of a TRO will not substantially injure other interested parties.. . 15
    D.    Injunctive Relief  Is in The Public Interest. . . . . . . . . . . . . . . . . . . . . . . . 16

III.    This Court has the authority to enjoin the Secretary from repealing the exemption of
      producer-handlers from the minimum pricing and pooling standards. . . . . . . . . . . . 16
    A.    This Court has the authority to enjoin the Secretary from repealing the
        exemption of producer-handlers from the minimum pricing and pooling
        standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    B.    There is no statutory provision that restricts the Court from considering this
        challenge under the APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.    Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

### I.    Introduction

For the first time in the seventy-year history of the milk regulations promulgated under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§601 *et seq.* ("AMAA"), the Secretary of the United States Department of Agriculture proposes to repeal the Congressionally mandated exemption of producer-handlers from the minimum pricing and marketwide pooling provisions of the milk marketing orders. 70 Fed. Reg. 74166 (December 14, 2005) ("Proposed Rule"). "Producer-handlers are dairy farmers who process milk from their own cows in their own plants and market their packaged fluid milk and other dairy products themselves." http://www.ams.usda.gov/dyfmos/mib/_prod_hand_dscrp.pdf (December 21, 2005).

The plaintiffs, Northwest Producer-Handlers, are now being injured by the Proposed Rule and need immediate relief. The Secretary has no authority to repeal the exemption, however the Proposed Rule does just that. The Secretary possesses only that authority Congress has provided and no more. *Lehigh Valley Farmers v. Block,* 829 F.2d 409, 413 (3rd Cir. 1987) ("The terms and conditions that an order may contain are limited to those provided by statute."). Thus, the authority to impose minimum prices and pool obligations on producer-handlers depends on the authorizing statute and subsequent Congressional directives. 7 U.S.C. § 601 *et seq.* The AMAA does not provide the Secretary the legal authority to assess producers that neither sell the raw milk they produce to any handler nor purchase raw milk from any other milk producer.

Furthermore, Congress has repeatedly denied the Secretary any authority to change the long-standing legal status of producer-handlers, which has historically exempted them from the minimum

pricing and pooling provisions of the federal orders.  In 1990, Congress again ratified the exemption of producer-handlers from the very obligations the Secretary now seeks to impose.  Food, Agriculture, Conservation, and Trade Act of 1990, §115, Publ. L. 101-624 §115, 104 Stat. 3359 §115.  The Secretary has publicly acknowledged that the Department of Agriculture lacks any authority to change the legal status of producer-handlers when he stated that, "In the legislative actions taken by the Congress to amend the AMAA since 1965, the legislation has consistently and specifically exempted producer-handlers from regulation."  63 Fed. Reg. 4802, 4939-40 (January 30, 1998).

The Secretary's actions are arbitrary, capricious, and not in accordance with the law and must be enjoined.  This is not a matter for deference to the expertise of the Secretary.  Rather, it is a question of whether the Secretary has been delegated the power to legislate minimum prices for producer-handlers.  Because the Secretary has been denied such power, the Proposed Rule is not in accordance with law and must be enjoined to prevent further harm to the Northwest Producer-Handlers.

The fact that the Secretary lacked the authority to issue the regulations at issue is only the most glaring of the faults in this rulemaking.  The Secretary's actions constitute a dramatic departure from established rules and the Proposed Rule is already imposing punitive and ruinous costs upon businesses that have legitimately relied on longstanding legislation.  The Secretary must adequately explain the agency's conclusions in terms of the evidence in the hearing record and the applicable legal standards.  But here, the Secretary's actions fail to meet the standard of reasoned decisionmaking because he does not provide a rational and credible explanation for his findings and conclusions and departure from prior decisions.  Additionally, he has systematically ignored objections and contrary evidence introduced by the opponents of the Proposed Rule.

The Proposed Rule applies to producer-handlers whose sales of beverage milk (sometimes called

2

"Class I" or "route distribution") exceed three million pounds of milk (approximately 260,000 gallons) per month. Plaintiffs, Edaleen Dairy, LLC., Mallorie's Dairy Inc., and Smith Brothers Farms, Inc. (collectively "Northwest Producer-Handlers"), fall into the category of affected producer-handlers and seek only to maintain their current legal status under the Pacific Northwest Milk Marketing Order (7 C.F.R. Part 1124, "Order 124") until this Court has time to fully review the Secretary's authority to repeal their longstanding exemption from the minimum pricing and pooling provisions of the Federal Milk Marketing Order. Absent an injunction, the Proposed Rule will impose substantial obligations on the family-owned Northwest Producer-Handlers and force them to break up or significantly shrink their integrated operations to avoid other economic consequences of the Proposed Rule. To avoid catastrophic losses in their businesses that have been structured to operate under the current regulatory environment, the Northwest Producer-Handlers are now forced to make costly and permanent changes to their employment, herd size, operations, ownership, and the like to maintain viable businesses.

Unless this Court intervenes to stop the Secretary's illegal regulations, the Northwest Producer-Handlers must now begin altering their operations; these costs and harms cannot be recovered. *See generally*, Declarations of Professor Ronald D. Knutson, Scott Highland, Richard Mallorie, Charles Flanagan and Duane Brandsma. An injunction is urgently needed now to stay the implementation of this illegal rule and maintain the status quo because the Secretary is currently conducting a referendum and will implement the Proposed Rule at the earliest possible date. Once these steps are taken, and clearly by the time the Proposed Rule is implemented, the enormous losses cannot be undone or relief obtained. The Northwest Producer-Handlers were unfortunately forced to commence litigation and seek a stay of proceedings to avoid imminent, irreparable losses.

In order to operate his business, the producer-handler must shoulder extraordinary burdens. He

3

must also exercise complete and exclusive, integrated operational control over all facilities and resources for the production, processing, and distribution of milk. The essence of a producer-handler is that he control all aspects of production, processing and distribution, and control it all alone. *See* 7 C.F.R. § 1124.10. The three plaintiffs in this case have successfully shouldered these burdens and operated their businesses under this model for decades. The Proposed Rule reverses course on decades of regulatory precedent, and in the process, tramples over the boundaries of the Secretary's authority established by Congress and usurps the legislative powers vested in the Congress.

**II.    Northwest Producer-Handlers are entitled to a Temporary Restraining Order and/or a Preliminary Injunction.**

A temporary restraining order or preliminary injunction is appropriate if the Northwest Producer-Handlers demonstrate (1) a substantial likelihood of success on the merits; (2) that Producer-Handlers would suffer irreparable injury if the requested relief is denied; (3) that an order would not substantially injure other interested parties; and (4) that the public interest would be furthered by granting the order. *See, United States v. Microsoft Corp.,* 147 F. 3d 935, 943 (D.C. Cir. 1998) *(citing CityFed Financial Corp. v. Office of Thrift Supervision,* 58 F. 3d 738, 746 (D.C. 1995)).

The standard for granting a temporary restraining order in this Circuit was set forth in *Virginia Petroleum Jobbers Assoc. v. FPC,* 259 F. 2d 921, 925 (D.C. Cir. 1958). In *Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F. 2d 841, 843-45 (D.C. Cir. 1977) the court held that although the factors outlined in *Virginia Petroleum Jobbers* controlled, "the view that a 50% probability is required by *Virginia Petroleum Jobbers* is contrary to both the language and spirit of that opinion." *Washington Metro,* 559 F. 2d at 844.

The *Washington Metro* court made the standard for granting a temporary restraining order more

flexible when it held:

> Under *Virginia Petroleum Jobbers* a court, when confronted with a case in which the other three factors strongly favor interim relief, may exercise its discretion to grant a stay if the movant has made a substantial case on the merits. The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed may grant a stay even though its own approach may be contrary to movant's view of the merits. The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other factors.

*Washington Metro*, 559 F.2d at 843.

> Finally, the court noted that temporary relief:

> is preventative, or protective, it seeks to maintain the status quo pending a final determination of the merits of the suit. An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success.

*Id.* at 844.

As demonstrated herein, these standards are met in this case. An order to maintain the decades old status quo is appropriate in this case because the administrative repeal of the legislated exemption of producer-handlers is clearly contrary to law and presents a serious legal question for review. Moreover, the plaintiffs have shown through their declarations that irreparable harm is already starting to happen. In contrast to that very real harm, the Secretary will not be harmed by a delay of weeks in his effort to repeal a standard that has existed for seventy years. Finally, the public interest is always served by keeping agencies within the bounds of the law.

### A.    Northwest Producer-Handlers will succeed on the merits because the Secretary exceeded his authority under the AMAA.

Northwest Producer-Handlers challenge the Secretary's decision to amend the Federal Milk Marketing Orders by adding a rogue provision, not lawfully allowed, to substantially alter the pricing and

pooling of producer-handlers and repeal their exemption from minimum pricing and pooling. Prior to this rulemaking proceeding, the Secretary's own announcements stated that eliminating the producer-handler exemption was illegal. Nothing has changed in the law.

        **1.**      **In issuing the Proposed Rule, the Secretary has usurped the legislative power of Congress.**

In the AMAA, Congress specifically defined the limited authority granted to the Secretary. The provisions relevant to milk marketing orders begin with a statement of limited power, "In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, **and . . . no others**." 7 U.S.C. § 608c(5) (emphasis added). If the Secretary has the authority to impose minimum pricing or pooling on Northwest Producer-Handlers who do not purchase milk, that authority must be affirmatively stated in the AMAA. It is not.

Instead, the AMAA consistently refers to transactions in which handlers purchase milk from producers. The AMAA regulates the prices at which these purchases take place, language which cannot be stretched to encompass the integrated operations of producer-handlers who rely on their own production and not purchases of milk. The statute authorizes the Secretary to fix or provide a method for fixing "minimum prices ... which all handlers shall pay, and the time when payments shall be made, **for milk purchased** from producers or associations of producers." 7 U.S.C. §608c(5)(A) (emphasis added). An Order can provide "**for the payment to all producers** and associations of producers delivering milk to the same handler of uniform prices for all milk delivered by them" (individual handler pool), or "**for the payment to all producers** and associations of producers delivering milk to all handlers of uniform prices for all milk so delivered, irrespective of the uses made of such milk by the individual handler to whom it is delivered" (marketwide pool). 7 U.S.C. §608c(5)(B) (emphasis added). These payments to producers

6

encourage seasonal adjustments in the production of milk through "equitable apportionment of the total value **of the milk purchased** by any handler [as opposed to possessed by own production]," and an adjustment "equitably to apportion the total value **of milk purchased** by any handler or by all handlers among producers on the basis of the milk components contained in their marketings of milk." (emphasis added). Subsections (D) and (E) continue this theme, referring again to milk purchased by handlers from producers, and payments made by handlers to producers.

The meaning of both "purchase" and "price" within the statutory context is plain and unvarying. Black's Law Dictionary defines "purchase" as "[t]he act or an instance of buying" which necessarily involves the transmission of property from one person to another by voluntary act and agreement founded on valuable consideration. Black's Law Dictionary, 7th Ed. 1248 (1999). Because producer-handlers neither pay themselves nor purchase milk, they fall completely outside the statutory authority of the Secretary.

It is anticipated, however, that the Secretary will attempt to seize upon an isolated reference in the AMAA to uniformity "as among handlers (including producers who are also handlers)." 7 U.S.C. § 608c(5)(C), to equate handlers with producer-handlers throughout the AMAA. The argument is that the phrase "including producers who are also handlers" facially suggests that Congress saw producer-handlers as handlers and thus the AMAA does not provide a limitation on the Secretary's power over producer-handlers. To the contrary, the clause has a context and that context modifies not just "handlers" but the parenthetical by limiting the pool for "the value of the milk purchased by him at the prices fixed in accordance with paragraph (A) of this subsection," 7 U.S.C. § 608c(5)(C) (emphasis added). Thus by its own language the pooling of subsection (C) is limited to transactions involving a purchase, not own farm production. If there were any doubt, this pooling can only include the value from prices set in subsection

7

(A) and that clearly is limited to purchased milk.

The phrase "producers who are also handlers" accentuates the exemption of producer-handlers under the AMAA. Without that phrase then even when a producer-handler purchased milk it would be exempt. Congress showed that the general exemption had its own limits. For example, the Secretary in the current regulations for producer-handlers allows them to purchase 150,000 pounds of milk per month without losing their status as a producer-handler but does require that milk be purchased at minimum prices and pooled.

It is a cardinal rule of statutory construction that a statute should be read as a consistent and coherent whole. The only construction of the AMAA that affords a consistent, coherent, and logical meaning to every provision is one that limits the scope of milk marketing orders to arms-length transactions between producers and handlers that are separate entities. Extending the orders to producer-handlers who neither sell nor purchase raw milk would do violence to the plain language of the Act and render parts of the Act nonsensical.

2.    **Congress has repeatedly preserved the exempt status of producer-handlers.**

The Secretary has never before imposed minium pricing and pooling provisions on producer-handlers but has instead exempted them from those provisions. The Secretary, however, claims in the Proposed Rule that the Secretary could regulate producer-handlers "if they singularly, or collectively have an impact on the market." Proposed Rule, 70 Fed. Reg. at 74185. The Supreme Court in deciding another milk marketing order case considering the role of administrative action to interpret a statute stated, "The Court may not, however, abdicate its ultimate responsibility to construe the language employed by Congress." *Zuber v. Allen*, 396 U.S. 168, 193 (1969). The history of the producer-handler exemption

8

arises out of clear Congressional directive and shows that the Secretary's allegation of authority to repeal the exemption is not only without Congressional authority but in direct violation of it.

From the beginning of the milk marketing system the Secretary has exempted producer-handlers from the minimum pooling and pricing. Prior to the Proposed Rule, not a single order has abrogated that exemption, not one. Beginning in the 1960's, Congress ratified the Secretary's treatment of producer-handlers and made it clear that the Secretary had no such authority to change the producer-handler regulations. In 1990, Congress made some changes to the AMAA but maintained the legal status of producer-handlers stating:

> The legal status of Producer-handlers of milk under the Agricultural Adjustment Act (7 U.S.C. 601 *et seq.*), reenacted with amendments by the Agricultural Marketing Agreement Act of 1937, shall be the same after the amendments made by this title [Title I of Pub.L. 101-624 Nov. 28, 1990, 104 Stat. 3374] take effect as it was before the effective date of the amendments.

Food, Agriculture, Conservation and Trade Act of 1990, Publ. L. 101-624, Section115. There was no qualification to the exemption.

At that time, the Northwest Producer-Handlers were marketing milk within one of the predecessor orders to Order 124. Under the terms of that order they had to use only milk produced on their farms except they could purchase up to 5,000 pounds, or approximately 450 gallons, per month from farmers and still remain exempt.

In 1996, the Congress directed the Secretary to undertake a major revision of the Federal Milk Marketing Orders. Federal Agriculture Improvement and Reform Act of 1996, 7 U.S.C. '7253(a) (Supp.1999) ("FAIR Act"). At that time, the Secretary considered the legal status of the producer-handler exemption and made this statement in a recommended decision:

**In the legislative actions taken by the Congress to amend the AMAA since 1965,**

9

> **the legislation has consistently and specifically exempted producer-handlers from regulation.** The 1996 Farm Bill, unlike previous legislation, did not amend the AMAA and was silent on continuing to preserve the exemption of producer-handlers from regulation. However, past legislative history is replete with the specific intent of Congress to exempt producer-handlers from regulation. **If it had been the intent of Congress to remove the exemption, Congress would likely have spoken directly to the issue rather than through omission of language that had, for over 30 years, specifically addressed the regulatory treatment of producer-handlers. Since producer-handlers are intended to be exempt from most regulation, some means must be provided to determine and to verify producer-handler status.** Accordingly, the market administrator is provided with the authority to require reports and other information deemed appropriate to determine that an entity satisfies the requirements of producer-handler status. Such authority is currently provided in the orders and should continue.

63 Fed. Reg. 4802, 4939-40 (January 30, 1998) (emphasis added). After receiving comments requesting the Secretary to still regulate producer-handlers, the Secretary issued a proposed rule within a final decision and stated:

> It has been a long-standing policy to exempt from full regulation many of those entities that operate as both a producer and a handler.…Some modifications have been made to the producer-handler provisions in the consolidated orders for standardization. However, no changes have been made that would intentionally regulate a producer-handler that is currently exempt from regulation under their current operating procedures.…**One of the public comments received proposed that the exemption of producer-handlers from the regulatory plan of milk orders be eliminated. This proposal is denied.**

64 Fed.Reg. 16135 (April 2, 1999) (emphasis added).

After producers sued to enjoin a pricing provision unrelated to the producer-handler exemption, Congress stepped in, ordered an amendment in the Class I pricing, a hearing to change the Class III and IV prices, and otherwise ratified the Proposed Rule and ordered its implementation including the exemption of producer-handlers. H.R. 3428, the Legislative Directive, as part of Consolidated Appropriations Act, 2000, Pub.L. 106-113, Div. B, §1000(a)(8) [§2], Nov. 29, 1999, 113 Stat. 1536, 1501A-518 (2000 Act). There have been no subsequent Congressional actions to provide the Secretary authority to regulate producer-handlers.

10

The law is clear with regard to the existence of the producer-handler exemption and the Secretary is not entitled to deference on this issue. In this regard, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), is closely on point. The Supreme Court in *Brown & Williamson* rejected the FDA's effort to regulate tobacco products notwithstanding statutory language that was far more supportive of administrative authority than the statutory provisions of the AMAA are in this case. The Court relied heavily on the fact that Congress had adopted a number of statutes addressing tobacco against the backdrop of FDA statements that tobacco was beyond the scope of its regulatory authority. These subsequent statutes effectively engrafted the exclusion of tobacco from the FDA's authority into the statute itself and prevented the agency from later attempting to assert that authority against tobacco companies. Under the reasoning of *Brown & Williamson*, Congress's repeated amendments to the milk marketing provisions, which expressly preserved the exempt status of producer-handlers, prevent the Department from now asserting authority to regulate producer-handlers that neither purchase nor sell milk.

There is simply no authority to impose minimum pricing regulations on producer-handlers. By issuing a Proposed Rule that does so, the Secretary has exceeded his power and usurped the legislative function reserved exclusively to Congress. Northwest Producer-Handler s are likely to succeed on the merits of this case.

**B.      Northwest Producer-Handlers Will Suffer Severe And Irreparable Injury Unless the Secretary Is Restrained Immediately From Implementing the Proposed Rule.**

The Proposed Rule applies to producer-handlers whose sales of Class I milk exceed three million pounds of milk per month (approximately 260,000 gallons). 70 Fed. Reg. at 74189. Under the Proposed Rule, once a producer-handler sells more than three million pounds of milk per month, the producer-handler must account to the federal order for the minimum price on all of the milk it sells. *Id.* All of the

11

Northwest Producer-Handlers exceed this threshold and, therefore, are subject to the full impact of the Proposed Rule. Declarations of Duane Brandsma, Scott Highland, Charles Flanagan, Teresa Kilgus, and Richard Mallorie.

Because the Northwest Producer-Handlers do not purchase milk from other farmers but use their own farm produced milk, there is no transaction upon which a minimum price may be imposed. To get around this economic reality, the Secretary has devised a formula that will require affected producer-handlers to pay the difference between the announced minimum use price for their milk and the uniform price announced for the same month. 70 Fed. Reg. at 74186. The initial monetary costs to the Northwest Producer-Handlers reaches into the hundreds of thousands of dollars per month and millions of dollars per year. Declarations of Brandsma, Highland, Flanagan, Kilgus, and Mallorie. So punitive is this assessment, that the producer-handlers will be compelled to cease being producer-handlers of that size or altogether and reorganize their operations into separate, not integrated, entities. The real world damages, and the irreparable harm to the Northwest Producer-Handlers, is not the payment to the producer settlement fund, but the attendant damage to their businesses as a result of the restructuring. These irreparable harms, discussed in detail below, are incalculable.

    1.    **Taxing producer-handlers by requiring payments to the producer settlement fund on their own farm produced milk forces an absolute need to adjust business operations at unknown and unrecoverable costs.**

Dr. Ronald Knutson, a dairy economist, states in his declaration in response to the Proposed Rule

the producer-handler entities that would be subject to these regulations would suffer real and immediate economic damages as a result of the regulatory changes that would also jeopardize the future of their operation as a producer-handler. This is because while they must pay an assessment on their sales, they do not receive any benefit in return such as price protection. The producer-handlers still assume all risks of all of the operation. The assessment does not change that.

Knutson Decl. ¶14.

He goes on to explain that

> The extent to which these costs could be recovered from the market is problematic and would likely entail a basic change in the nature of their operations involving the discontinuation of their existence as producer-handlers. Additional costs are not easily extracted from the market and to do so requires the acquiescence of existing processors who would be expected to prefer the option of fewer competitors in the long run to a higher price in the short run.

*Id.* at ¶15.

He testifies that the economic impact has been immediate upon the announcement of the Proposed Rule. *Id.* at ¶17. He then explains that these producer-handlers will have to restructure but will not obtain the same economic return as under the current business model. The options include:

> (a) Discontinue milk production and expend large amounts of capital to grow their operations and capitalize on the economies of scale in processing. The success of this option is highly problematic since, even if the capital were available, the primary competitors are multi-market in scope. (b) Close down their processing operations and become a conventional producer marketing milk through the dominant cooperative. The salvage value of the processing operation would be practically nothing because they were constructed to serve the producer-handler market; (c) Sell production assets and reduce producer-handler capacity to fall beneath the 3 million pound threshold established by the new regulations. This option may not be feasible because it would require operating the existing plant at less than capacity, meaning higher fixed costs per unit of output. In addition the lower volume plant may not be able to reliably supply larger volume buyers, thus jeopardizing the market and the producer-handlers' business model. (d) Expand the scope of both the production and processing operations to take advantage of economies of size while expanding the ability to serve customers. This is not a feasible option because there are limits on economies of size in production. Further, as I stated above, existing competitors will make expansion of sales difficult at best. Based upon my interviews with the affected producer-handlers, the ability for them to survive as producer-handlers under the Proposed Rule is miniscule.

*Id.* at ¶19.

Finally, Dr. Knutson shows that the three million pound cap is an arbitrary number having no significance in dairy economics and only arrived at because that is what the proponents of the rule wanted.

> The selection of 3 million pounds per month as the threshold for imposition of the producer-handler tax is purely arbitrary. I am not aware of any study or presentation in dairy economics that has considered 3 million pounds per month to be a threshold for anything. As an economist I conclude that this is the point at which the industry proponents of the tax believe that no producer-handler operation can survive.

*Id.* at ¶11. The Government cannot seriously contend that Northwest Producer-Handlers are not currently being adversely impacted by the Proposed Rule.

The announcement of the Proposed Rule is already creating a market response detrimental to the economic and legal interests of the Northwest Producer-Handlers and the harm will continue to grow unabated absent court intervention. The Northwest Producer-Handlers are harmed in their ability to maintain and seek customers, to maintain and seek employees, and in their need to make business decisions for the future. As described in the Declarations of the producer-handlers filed with this Court under seal, losses of customers and employees are already occurring and decisions about the future organization of their businesses cannot be delayed.

If the Court does not act to preserve the status quo and enjoin the Secretary's implementation of the illegal Proposed Rule to the further detriment of the Northwest Producer-Handlers, Plaintiffs will suffer severe and irreparable loss of revenue from the sale of their milk, will be required to make significant, irreversible changes in employment, operations, customer base, production and other actions to mitigate the effects of operating an integrated operation under the Proposed Rule.

The threat of business loss, in part or in whole, is an example of irreparable injury. *Columbia Broadcasting System v. U.S.*, 316 U.S. 407, 423 (1942); *Mova Pharmaceutical Corp., v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). Irreparable harm in this case is ongoing because the market is in motion and already responding to the announcement of the Proposed Rule. Northwest Producer-Handlers have to respond to the new scheme or face catastrophic losses. Once implemented, the status

14

quo will be altered and this court will be effectively precluded from granting meaningful relief on the Northwest Producer-Handlers' claims. The status quo, that is the exemption of Producer-Handlers from minimum pricing and pooling has been maintained for 70 years. A delay of a short period of time to consider the claims of illegality of the rulemaking is, in the long term scheme of things, inconsequential.

Since the enactment of the AMAA, producers that process their own farm production instead of selling it to a third-party handler, have not been subjected to the pricing and pooling requirements of the AMAA. The status of these "producer-handlers" has remained unchanged for almost seventy years and, as the Department acknowledges, has been protected by Congressional enactments.

**C.      The issuance of a TRO will not substantially injure other interested parties.**

The issuance of an injunction in this case will simply maintain the status quo that has existed in the dairy industry with regard to producer-handlers for nearly seventy years. Because Northwest Producer-Handlers are likely to succeed on their claim that the Secretary has exceeded his authority, the Proposed Rule is illegal, and the delay of any "benefits" of these illegal regulations to pooled producers and fully regulated handlers cannot be considered injury. *See Mova*, 140 F.3d 1066, n. 6 ("Our polity would be very different indeed if the courts could decline to enforce clear laws merely because they thought them contrary to the public interest; we decline to embark upon that path."). Additionally, the Secretary has no pecuniary or vested interest in implementation of the regulations. Compelling the Secretary to comply with the law cannot be considered an "injury." Northwest Producer-Handlers have been operating in these orders for thirty to eighty years and the market has grown and prospered.

The potential of a couple of penny payment to other producers is statistically insignificant. The alleged impact of a few cents per hundredweight to other producers constitutes less than a quarter of one percent of their gross income. Knutson at ¶24.

**D.      Injunctive Relief Is in The Public Interest.**

The continuation of the exemption for producer-handlers is required by Congressional directive. Following the law is always in the public's best interest. *Mova*, 140 F.3d at 1066. Furthermore, during the proceedings following the Recommended Decision over 12,000 individuals sent emails or letters to the Secretary in support of the continued exemption of the producer-handlers.

Injunctive relief is appropriate in this case because Northwest Producer-Handlers have demonstrated a likelihood of success on the merits as the Proposed Rule is an illegal usurpation of the Congressional power, irreparable harm is already occurring, and there is no injury to other interested parties, let alone the public.

**III.    This Court has jurisdiction to hear this case.**

   **A.      This Court has the authority to enjoin the Secretary from repealing the exemption of producer-handlers from the minimum pricing and pooling standards.**

The Supreme Court in *Stark v. Wickard*, 321 U.S. 288 (1944) held that producers who had identifiable claims under the AMAA were entitled to seek judicial relief unless the statute clearly stated the courts were without jurisdiction. Alternatively, jurisdiction is appropriate in a challenge to a flawed on-the-record rulemaking under the Administrative Procedures Act. *Alto Dairy v. Veneman*, 336 F.3d 560 (7th Cir. 2003) (upholding a challenge to a milk marketing order regulation promulgated in violation of federal law under the authority of the APA) . As Judge Posner has held, The Administrative Procedure Act provides that the Court may enjoin implementation pending judicial review.

> * * *On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. §705.

The interest that Northwest Producer-Handlers are seeking to protect is their pecuniary interest in the revenue which the Secretary has stated they must under the Proposed Rule "share" with other producers. 70 Fed. Reg. at 74166 ("With respect to dairy farmers whose milk is pooled on the two marketing orders, such dairy farmers who have not heretofore shared in the additional revenue that accrues from the marketwide pooling of Class I sales by producer-handlers will share in such revenue.") Further, the Secretary now views the Northwest Producer-Handlers as "producers" for purposes of participating in the referendum on the order. See, Affidavit of Flannagan (filed under seal) ¶¶16-17.

The right to this money now held or prospectively to be held by the Northwest Producer-Handlers is peculiar to them and to no one else absent the Proposed Rule. The Northwest Producer-Handlers allege and have shown that the exercise of the Secretary's authority to take that money is illegal and that they have a peculiar claim to revenue from their operations and thus a right to seek to have the rule declared illegal as producers so as to preserve their interests as producers in the revenue from the sale of their milk.

**B.    There is no statutory provision that restricts the Court from considering this challenge under the APA.**

The Supreme Court noted that plaintiffs are entitled to judicial review unless the statute clearly denied the courts jurisdiction. *Stark,* 321 U.S. at 307-08. While the AMAA provides for an administrative remedy to handlers, not producers, seeking a modification or exemption from the application of a marketing order, the case law is clear that producers who can show a definite property loss or other pecuniary right have a right to make a claim. *Id.,* 7 U.S.C. § 608c(15).

It is nonetheless anticipated that defendant will argue that jurisdiction is barred until Northwest Producer-handlers exhaust the administrative remedy under 7 U.S.C. §608c(15)(A).

17

(15) Petition by handler for modification of order or exemption; court review of ruling of Secretary (A) Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

Making the producer-handlers exhaust that mechanism would be to deny them due process because it provides them no remedy. As noted in the accompanying declarations, the damages are being incurred now and are not recoverable. The producer-handlers cannot sustain millions of dollars in damages as they are exhausted in an adjudicatory process. There is no interim relief available. In *In re Moser Farms Dairy, Inc.*, 40 Agric. Dec. 1246, 1250 (1981), the Secretary's chief judicial officer held that interim relief would never be available to a handler in a (15)(A) proceeding involving an order obligation to a milk handler. So strong was the officer's opinion that he argued that right to such interim relief be removed from the rules of practice for hearings under (15)(A). *Id.*

**IV.    Relief Sought**

Northwest Producer-Handlers seek an injunction preventing the implementation of the Proposed Rule as it seeks to impose minimum pricing and pooling provisions on the Northwest Producer-Handlers. Such a stay will maintain the status quo of producer-handlers pending final review.

**V.    Conclusion**

WHEREFORE, the Plaintiffs respectfully request that this Court grant a temporary restraining order and/or preliminary injunction ordering that the Secretary, his agents and attorneys and those persons in active concert or participation with them who receive actual notice of this order be restrained, until further order of this Court from implementing minimum pooling and pricing provisions in amendments to the

regulations found at 7 C.F.R. Parts 1124 -as so identified at 70 Fed. Reg. 74161 (December 14, 2005).

Respectfully submitted,

BENJAMIN F. YALE (DC Dist. Bar No. OH0008)
KRISTINE H. REED (DC Dist. Bar No. OH0007)
RYAN K. MILTNER (DC Dist. Bar No. OH0006)
Yale Law Office, LP
527 North Westminister St.
P.O. Box 100
Waynesfield, Ohio 45896
419-568-5751
Fax:  419-568-6413
Ben@yalelawoffice.com
ATTORNEYS FOR PLAINTIFFS

19