UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDALEEN DAIRY, LLC ) | CIVIL NO.: 05-CV-2442 PLF |
| MALLORIE'S DAIRY, INC. and ) | |
| SMITH BROTHERS FARMS, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| MIKE JOHANNS, ) | |
| SECRETARY OF AGRICULTURE, ) | |
| UNITED STATES DEPARTMENT OF ) | |
| AGRICULTURE ) | |
| ) | |
| Defendant. ) | |

### EXPEDITED MOTION TO INTERVENE OF THE UNITED DAIRYMEN OF ARIZONA, SHAMROCK FOODS COMPANY, SHAMROCK FARMS, PARKER FARMS AND DEAN FOODS COMPANY

Pursuant to Fed.R.Civ.P. 24, United Dairymen of Arizona, Shamrock Foods Company, Shamrock Farms, Parker Farms and Dean Foods Company (collectively "Movants") respectfully move this Court for intervention in this action as defendants. Movants request expedited consideration of this motion. The Court has set a deadline of Wednesday, December 28, 2005 at 10 am for the filing of briefs responsive to Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction and has set a hearing for 2 pm on Thursday, December 29, 2005. Movants intend to abide by the schedule set by this Court but request that the Court consider and grant this motion on an expedited basis so that Movants may fully participate in the process.

Pursuant to LCvR 7.1(a) Movants attach their memorandum of points and authorities in support of this Motion to Intervene and ask that it be incorporated herein.

Pursuant to Fed.R.Civ.P. 24(c) and LCvR 7.1(j), Movants attach hereto their Answer to the Complaint and their Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction.

Wherefore, the Movants ask that this Court grant the Motion to Intervene and for all other relief this Court deems fair and just.

Respectfully submitted,

/s/ Charles M. English, Jr.
Charles M. English, Jr.
D.C. Bar No.: 386572
Sara Pikofsky
D.C. Bar No.: 485948
Thelen Reid & Priest LLP
701 8th Street NW
Washington, DC  20001
Telephone:  202.508.4000

December 23, 2005                              *Attorneys for Proposed Intervenors*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDALEEN DAIRY, LLC | ) | CIVIL NO.: 05-CV-2442 PLF |
| MALLORIE'S DAIRY, INC. and | ) | |
| SMITH BROTHERS FARMS, INC. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MIKE JOHANNS, | ) | |
| SECRETARY OF AGRICULTURE, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| AGRICULTURE | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE OF THE UNITED DAIRYMEN OF ARIZONA, SHAMROCK FOODS COMPANY, SHAMROCK FARMS, PARKER FARMS AND DEAN FOODS COMPANY**

Plaintiffs Edaleen Dairy LLC, Mallorie's Dairy, Inc. and Smith Brother Farms, Inc. (hereafter collectively referred to as "Plaintiffs") brought this action seeking review of a prospective order that may be implemented by the United States Department of Agriculture ("USDA") no earlier than March 1, 2006. The Proposed Rule would, if and when it becomes effective, alter the regulatory treatment of producer-handlers by limiting the producer-handler status to those smaller businesses that are not large commercial operations. As a result, large commercial producer-handlers like their regulated competitors (many of which are small businesses) would no longer be exempt from the minimum pricing and pooling provisions of two of ten Federal milk marketing orders.

United Dairymen of Arizona ("UDA"), an agricultural milk marketing cooperative located in Tempe, AZ, seeks to intervene in its own right. UDA is the only dairy cooperative

based in Arizona, consisting of approximately 76 producers, averaging 1,200 dairy cows per dairy farm, who produce approximately 90% of the milk in Arizona.

Shamrock Foods Company, an operator of a fluid milk plant in Arizona, seeks to intervene in its own right.

Shamrock Farms, a dairy farm located in Stanfield, Arizona, seeks to intervene in its own right.  Shamrock Farms is not a member of UDA.

Parker Farms, a dairy farm located in Stanfield, Arizona, seeks to intervene in its own right.  Parker Farms is not a member of UDA.

Dean Foods Company, an operator of a fluid milk plants with sales in both Arizona and the Pacific-Northwest order area, seeks to intervene in its own right.

## BACKGROUND

Enacted in 1937, the Agriculture Marketing Agreement Act, 7 U.S.C. § 601 *et seq.*, authorizes USDA to ensure "an orderly flow of the supply [of various commodities, including milk] to avoid unreasonable fluctuations in supplies and prices." 7 U.S.C. § 602(4).  For over 70 years, pursuant to this and prior authority, USDA has established minimum regulated prices that milk processors must pay dairy farmers for raw milk.  Milk processors, or handlers, have always been required to pay minimum regulated prices when purchasing raw milk from producers.  Certain proceeds from the regulated prices are funneled to regional pools ("equalization funds").  The proceeds are then divided and paid back to the milk producers or dairy farmers.  Certain producer-handlers, or entities that serve as both dairy farms and processors, have been subject to varying degrees of regulation, but have largely been exempt, based upon administrative convenience, from paying the regulated prices and thereby from contributing to the equalization fund.

After a lengthy and deliberative rule-making process, reaching back almost 5 years as to Arizona and 3 years as to the Pacific Northwest, that included a hearing notice, formal hearings stretching out over five months, and extensive briefing, the Secretary announced a Proposed Rule on December 14. That Rule awaits a vote of approval or disapproval by the dairy farmers with ballots due to be postmarked no later than January 12, 2006. We understand that in order to assure receipt of all ballots, no ballots will be counted until January 17, 2006. Assuming that the vote is in the affirmative, USDA may then publish in the Federal Register both the fact of that affirmative vote and, subject to its process, an implementing Final Rule that cannot be effective for at least 30 days after publication. Thus, any Rule cannot be effective before March 1, 2006 since the Secretary makes such rules effective on the first of a month for administrative and industry convenience. Notwithstanding plaintiffs' purported sense of urgency, there is no final agency action for this Court to review at this time.

Upon adoption of the new Rule, producer-handlers, like other regulated competitors, would be required to pay the same regulated minimum prices as other regulated handlers. Since they are Class I bottlers of milk, they would likely account to the federal order equalization fund and, just like their regulated competitors (Shamrock Foods and Dean) pay the difference between the order blend price and their plant classified price into the equalization fund for distribution to dairy farmers such as UDA, Shamrock Farms and Parker Farms. To be clear the Proposed Rule under attack by plaintiffs would be adopted in two federal market orders and plaintiffs would be paying into the Pacific-Northwest equalization fund, while defendant intervenors UDA, Shamrock Farms and Parker Farms would receive money under the Arizona federal order.

The chief purpose of federal marketing orders is to ensure that all dairy farmers, including UDA, Shamrock Farms and Parker Farms, receive uniform minimum prices for their

milk by sharing fully in the proceeds from the milk used to produce higher value bottled milk. *United States v. Rock Royal Co-operative, Inc.,* 307 U.S. 533 (1936) (first in very long line of cases upholding legality and reasonableness of federal market order program).

USDA's well-considered and planned, but not final, implementation of this rule change would serve to meet the goals of the Agricultural Marketing Agreement Act by assuring that all dairy farmers share in this value and would also level the playing field among large commercial producer-handlers and their competitor handlers. As a result of the repeal, the farmer Movants would benefit by the distribution of additional funds from the regional pools. The handler Movants would benefit by more fair competition as the producer-handlers would be required to pay the same price supports as the handlers. Plaintiffs' efforts to impede the implementation of the Proposed Rule would result in significant financial harm to Movants.

In order to protect their interests, the Movants seek to intervene in this matter as defendants. Counsel for proposed intervenors has discussed this matter with counsel for the Plaintiffs. Counsel for the Plaintiffs is awaiting instructions from his clients. With the expedited hearing requested by the Plaintiffs next week and the holiday season, we are filing now. Counsel for proposed intervenors have also requested consent to the granting of this motion by the Department of Justice, counsel for USDA, and the Department of Justice has told us they do not object.

**ARGUMENT**

A.     The Movants are Entitled to Intervention of Right

Rule 24(a), Fed.R.Civ.P., provides:

"Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the

action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

In order to succeed on a motion to intervene of right, the intervenor must meet the following four criteria: (1) the applicant must file a timely application; (2) the applicant must claim an interest relating to the subject matter of the litigation; (3) the applicant's interest may be impaired by the disposition of the action; and (4) the applicant's interest is not adequately represented by the existing parties.  The Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003).[1]  Movants meet all the criteria and are entitled to intervene.

1.  Movants timely filed their application.

Plaintiffs provided USDA their motion for a temporary restraining order and/or preliminary injunction on December 21, 2005.  Movants filed their application to intervene on December 23, 2005.  Movants application clearly meets this first test.

2.  Movants possess an adequate interest in the subject matter of this case.

As some of the primary protagonists for the proposed change in the USDA rules, Movants clearly possess an adequate interest in the subject matter of this case.  In particular Movants have a substantial interest in the possibility of a temporary restraining order halting the

---

[1] In some instances the D.C. Circuit has required that a party seeking to intervene must demonstrate that it has Article III standing by demonstrating injury-in-fact, causation, and redressability.  Fund for Animals, 322 F.3d at 731-2, 733.  In other instances, the D.C. Circuit has tempered this requirement by stating that any party that meets the Rule 24(a) criteria of possessing an interest in the matter by definition also has standing.  Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003); Mova Pharmaceutical Comp. v. Shalala, 140 F.3d 1060, 1076 (D.C. Cir. 1998).  Roeder also recognized that requiring proof of standing from a defendant intervenor counters the standing doctrine which typically requires only the party seeking the court's jurisdiction to demonstrate standing.  Roeder, 333 F.3d at 233.  As Movants seek to intervene as defendants and as they fulfill all requirements of Rule 24(a), Movants also meet the standing requirement.  Id.

expected, but not definite implementation of the Proposed Rule.  The Proposed Rule, as explained above, will have a significant positive economic impact on Movants.  Movant Dean Foods is directly impacted by the Pacific-Northwest Proposed Rule.  While the Plaintiffs and the remaining Movants do business in different market orders, the Proposed Rule that the Plaintiffs seek to halt and declare void applies equally to both the Pacific Northwest and Arizona.  *See* paragraphs 74 and 76 of Complaint and Prayer for Relief.  The actions of the Plaintiffs therefore will have a tremendous negative impact upon the Movants.

      3.  Disposition of the action will impair Movants' interests.

Should the Court grant Plaintiffs' request for a temporary restraining order or preliminary injunction, Movants' interests would be significantly impaired.  Enjoining the rule would reverse USDA's attempts to re-establish a more even playing field at both the producer and the handler levels.  Movants would lose the benefit they would gain by the proposed requirement that certain producer-handlers pay the same minimum prices for fluid milk as other handlers, and lose the additional income they would receive as a result of additional monies being deposited into the joint pool.

The inequities imposed under the current rule, which exempts producer-handlers from certain federal milk order requirements (pricing and pooling), cause Movants to suffer substantial losses in the form of lost profits and diminished funds in regional pools.  Currently, according to USDA's conservative and now dated information, United Dairymen of Arizona incur annual losses of $820,000 to $1,230,000 under the existing rule.  Similarly, according to the USDA data, Shamrock Farms and Parker Farms suffer annual losses of roughly $80,000.  Unless the exemption is repealed, these losses will continue. Industry estimates of the losses are far greater, exceeding $3 million per year total for all Arizona dairy farmers.  Indeed, the new

rule is a zero-sum gain from the existing rule – the harms which the Plaintiffs seek to avoid by enjoining the repeal of the exemption equals the benefits that Movants (and other regulated handlers and producers) will enjoy by its enforcement.  But the cost to these intervenors of an injunction in Arizona exceeds the benefits of those who are presently plaintiffs.

Even if Movants would potentially have a later opportunity to challenge plaintiffs' actions, the Court should allow Movants to intervene now.  The D.C. Circuit has examined the practical consequences of intervention rather than the technicalities of whether the possibility of future challenge exists and favors the practical over the technical.  Fund for Animals, 322 F.3d at 735.  From a practical perspective, once Movants suffer the harms resulting from a failure to implement the Proposed Rule, they cannot recover their losses.  This Court should allow Movants to intervene in order to protect their interests.

4.  USDA does not adequately represent Movants' interests.

Movants need only demonstrate that the representation of their interests *may* be inadequate, a minimal burden to meet.  Fund for Animals, 322 F.3d at 735 (citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972)).  Based on this factor, a movant should be allowed to intervene unless it is clear that an existing party will provide adequate representation.  Id.

Although the government is the defendant in this case and the government typically represents the public interest, Movants interests go beyond those of the government and include the significant financial interests described above.  While both USDA and Movants want to protect the prospective implementation of the Proposed Rule, USDA will not necessarily take all of Movants' interests into account.  The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."  Fund for Animals, 322

F.3d at 736.  See also  Natural Resources Defense Council v. Costle, 561 F.2d 904, 912 (D.C. Cir. 1977) (stating "a shared general agreement with appellants that the regulations should be lawful does not necessarily ensure agreement in all particular respects about what the law requires" and "even when the interests of EPA and appellants can be expected to coincide, . . . that does not necessarily mean that adequacy of representation is ensured for purposes of Rule 24(a)(2)").  The same applies here as the USDA cannot fully and adequately represent the interests of Movants.

B.  In the Alternative, Movants should be Permitted to Intervene.

If the Court does not find that Movants may intervene as a matter of right, then, alternatively, the Court should permit intervention pursuant to Fed.R.Civ.P. 24(b).

Rule 24(b) provides that, upon timely application, "anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common."  The Plaintiffs allege that the Secretary exceeded his statutory authority in supporting the Proposed Rule.  The Movants wish to join this action to defend the validity of the Proposed Rule.  As a result, the Movants' defense clearly constitutes a question of law or fact in common with that raised by the Plaintiffs.  This Court should therefore exercise its discretion and allow Movants to intervene.

## CONCLUSION

For the foregoing reasons, the Movants are entitled to intervention as of right.  In the alternative, this Court should permit Movants to intervene.

Respectfully submitted,

/s/ Charles M. English, Jr.

|  |  |
|---|---|
|  | Charles M. English, Jr.<br>D.C. Bar No.:  386572<br>Sara Pikofsky<br>D.C. Bar No.:  485948<br>Thelen Reid & Priest LLP<br>701 8th Street NW<br>Washington, DC  20001<br>Telephone:   202.508.4000 |
| December 23, 2005 | *Attorneys for Proposed Intervenors* |