UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NORTHWEST INDEPENDENT** ) | |
| **PRODUCERS ASSOCIATION, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. 03-700 (RCL) |
| ) | |
| **ANN M. VENEMAN, Secretary of** ) | |
| **Agriculture, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant's motion to dismiss. Defendant moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) on grounds that the Court lacks subject matter jurisdiction, that plaintiffs have failed to exhaust administrative remedies, and plaintiffs have failed to state a claim. Upon consideration of defendant's motion, the opposition, the reply, the applicable law, and the facts of this case, the Court finds that defendant's motion to dismiss should be granted.

**I.      Background**

There are five plaintiffs in this action. Four of the plaintiffs are cooperatives of dairy farmers that also act as "handlers." The remaining plaintiff, Northwest Independent Producers Association ("NWI") is only a "producer" and "does not own or operate any processing facilities." Compl. ¶ 10. Plaintiffs bring this action to challenge a regulatory action of the Secretary of Agriculture that alters the mechanism by which price values for various classes of milk are determined under the Agricultural Marketing Agreement Act of 1937 ("AMAA"), as amended, 7 U.S.C. § § 601, et seq.

1

**II. Analysis**

The Court must determine two issues to resolve defendant's motion to dismiss. First, whether the claims of the four handlers should be dismissed for failure to exhaust administrative remedies? Second, whether the claims of the producer should be dismissed for lack of subject matter jurisdiction?

The administrative rights of handlers are set forth with precision in the AMAA. Specifically, the AMAA, 7 U.S.C. §608c(15)(A), requires handlers to petition the Secretary, have a hearing, and receive a ruling from the Secretary.[1] Once handlers complete these actions they may then seek judicial review pursuant to the next subpart, 7 U.S.C. §608c(15)(B).[2]

Plaintiffs claim they have exhausted their administrative remedies. Compl. ¶ 9. But plaintiffs do not allege that they requested an administrative hearing or received a final ruling in accordance with 7 U.S.C. §608c(15)(A). When confronted with this fact plaintiffs' response is that administrative relief is "chimerical and futile." Pls.' Mem. In Opp'n to Def.'s Mot. To Dismiss at 12 ("Pls.' Opp'n"). The Court finds plaintiffs' arguments of "futility" devoid of merit. The Supreme Court squarely rejected such thinking in <u>Block v. Community Nutrition Institute</u>, 467 U.S. 340 (1984). The Court stated that "Congress unequivocally directed handlers first to complain to the Secretary" and again stated that "we think it clear that Congress intended judicial review of market orders issued under the Act ordinarily be confined to suits brought by

---

[1] 7 U.S.C. §608c(15)(A) (2002) states:
> Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law.

[2] 7 U.S.C. §608c(15)(B) states:
> District Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are vested with jurisdiction in equity to review such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling.

2

handlers **in accordance with** 7 U.S.C. §608c(15)." Id. at 348 (emphasis added). Community Nutrition Institute involved a suit by consumers, but the Supreme Court's rationale that "[a]llowing consumers to sue the Secretary would severely disrupt this complex and delicate administrative scheme [and] would provide handlers with a convenient device for evading the statutory requirement that they first exhaust their administrative remedies" applies equally here. Id. In this case, handlers attempt to circumvent the plain statutory language by joining with a producer even though they have not exhausted their administrative remedies. Plaintiffs freely admit this is the case, stating: "[o]nce this Court concludes that [NWI] has standing to sue, it has subject matter jurisdiction and disputes over whether or not remaining plaintiffs have standing is irrelevant." Pls.' Opp'n at 2. This attempt to bootstrap the claims of handlers who have failed to exhaust to the claims of another party is precisely at issue in Community Nutrition Institute and is prohibited. The Court finds the handlers' failure to exhaust fatal and because Congress precluded judicial review in these circumstances, the handler plaintiffs' claims must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

The right of judicial review of the remaining plaintiff, a producer, is also determined in large measure by the Supreme Court's holding in Community Nutrition Institute. In addition to the statements above, the Supreme Court observed that

> Congress channelled [sic] disputes concerning marketing orders to the Secretary in the first instance because it believed that only he has the expertise necessary to illuminate and resolve questions about them. Had Congress intended to allow consumers to attack provisions of marketing orders, it surely would have required them to pursue the administrative remedies provided in § 608c(15)(A) as well. The restriction of the administrative remedy to handlers strongly suggests that Congress intended a similar restriction of judicial review of market orders.

467 U.S. at 347. This same rationale applies to producers as well. The Supreme Court considered both the administrative process and subsequent judicial review under the AMAA. It observed

3

that consumers were not part of the administrative process, which was reserved to handlers and producers. The Court stated that producers are "entitled to participate in the adoption and retention of market orders. 7 U.S.C. § §608c(8), (9), (16)B." Id. at 346. The Court concluded that as to the administrative process "[i]n a complex scheme of this type, the omission of such a provision is sufficient reason to believe that Congress intended to foreclose consumer participation in the regulatory process." Id. at 347 (citing cases). The Court then evaluated consumer right to judicial review and conducted the same analysis. It determined that preclusion "turns ultimately on whether Congress intended for that class to be relied upon to challenge agency disregard of the law," and since Congress only provided the right of judicial review to handlers, the Court found no basis for Congressional intent to allow consumers to bypass the administrative remedies or to have a right to judicial review. Id. at 347-348. Similarly, the inclusion of producers in the administrative process but their exclusion from the provisions enabling judicial review is the type of omissions that indicate a specific Congressional intent to omit. This omission is attributed to Congressional intent that handlers be "relied upon to challenge agency disregard of the law." Id. at 347. Such an inference is logical in light of the fact that the "'essential purpose [of this milk market order scheme is] to raise producer prices.'" Id. at 342 (quoting S.Rep. No. 1011, 74th Cong., 1st Sess., 3 (1935)). In the present case, this would be sufficient to determine that NWI cannot seek judicial review. NWI is joined by four handlers, showing a clear interest by those parties intended by Congress to challenge the agency's actions.

    The Court also considers Stark v. Wickard, 321 U.S. 288 (1944). In Stark, producers were allowed to bring suit when the Secretary made deductions from the producer settlement fund, acts the producers claimed were "beyond the Secretary's statutory power," 321 U.S. at 302. Since handlers could not question the use of the fund as they had no financial interest in it,

4

there was "no forum, other than ordinary courts, to hear this complaint." Id. at 309. Thus "[j]udicial review of the producer's complaint was therefore necessary to ensure achievement of the Act's most fundamental objectives." Community Nutrition Institute , 467 U.S. at 352.

Community Nutrition Institute evaluated the implications of the Stark holding and determined that the presumption in favor of judicial review found therein was overcome where "Congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" 467 U.S. at 351 (quoting Data Processing Service v. Camp, 397 U.S. 150, 159 (1970)). As applied in Community Nutrition Institute the lack of alternative forum argument failed because the Court concluded that "[h]andlers have interest similar to those of consumers [and] [h]andlers can therefore be expected to challenge unlawful agency action and to ensure the statute's objectives will not be frustrated." 467 U.S. at 352. In this case, plaintiff NWI cannot argue there is no alternative forum because handlers lack an interest in the issue. In fact, plaintiffs cite cases for the proposition that "the interest of dairy processors/manufacturers and their dairy farmer patrons dovetail to a substantial degree. Pls.' Application for a Prelim. Inj. and Mem. Of P. & A. in Supp. of Pls.' Application for a Prelim. Inj. at 57 (Mar. 18, 2003) (citing Jones v. Bergland, 456 F.Supp. 635, 650 (E.D. Pa. 1978)). Furthermore, the very presence of handlers as plaintiffs in the suit leads inexorably to the conclusion that a suit by a producer is not necessary to "ensure the statute's objectives will not be frustrated."

### III. Conclusion

The group of five plaintiffs in this suit is comprised of four handlers and one producer. Defendants move to dismiss the four handlers on ground that they have failed to exhaust the administrative remedies required as a prerequisite to judicial review under 7 U.S.C. §608c(15). Despite plaintiffs' arguments that such administrative remedies are futile the Court finds that the

5

handlers' failure to exhaust to their administrative remedies deprives this Court of jurisdiction over their claim. Accordingly, defendant's motion to dismiss is GRANTED as to plaintiffs Northwest Dairy Association, Tillamook County Creamery, Farmers Cooperative Creamery, and Agri-Mark, Inc. Defendant also moves this Court to dismiss plaintiff Northwest Independent Producers Association, a producer, on the ground that the Court lacks subject matter jurisdiction over the producer's claim because the AMAA does not provide producers a right of judicial review. The Court concludes that because handlers possess similar interests to producers and are capable, upon exhaustion of administrative remedies, of bringing suit pursuant to the AMAA, that defendant's motion to dismiss plaintiff Northwest Independent Producers Association is also GRANTED. Therefore, the claims of Northwest Independent Producers Association, Northwest Dairy Association, Tillamook County Creamery, Farmers Cooperative Creamery, and Agri-Mark, Inc. are dismissed for lack of subject matter jurisdiction.

**SO ORDERED.**

Signed by Royce C. Lamberth, United States District Judge, on April 6, 2004.