UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDALEEN DAIRY, LLC ) | |
| MALLORIE'S DAIRY, INC., and ) | |
| SMITH BROTHERS FARMS, INC. ) | |
| ) | |
| ) | CIVIL CASE NO. |
| --PLAINTIFFS, ) | |
| VS. ) | |
| ) | |
| MIKE JOHANNS, ) | |
| SECRETARY OF AGRICULTURE, ) | |
| UNITED STATES DEPARTMENT OF ) | |
| AGRICULTURE ) | |
| ) | |
| --DEFENDANT. ) | |

## DECLARATION OF SCOTT HIGHLAND

I, Scott Highland, am the President of Smith Brothers Farms, Inc. This Declaration is based upon my personal knowledge and belief and is provided in support of Plaintiffs' Motion For Temporary Restraining Order And/Or Preliminary Injunction And For Expedited Hearing. I am competent to testify about the statements and information in this Declaration if called upon to do so:

1. Smith Brothers is located in Kent, Washington and our farm is located in Royal City, Washington.

2. Smith Brothers was started by my wife's grandfather, Benjamin Smith, in the 1920's.

3. Smith Brothers has operated as producer-handler for most of its existence and has continuously operated as a producer-handler as that term is used in the current federal order regulations, 7 C.F.R. § 1124.10, and predecessor regulations since the 1960's.

4. Smith Brothers own the cows, milk the cows, process the milk and distributes its milk direct to the consumer through our independent milkmen, to stores through distributors, and to schools.

5. All of the shareholders of Smith Brothers are members of the family of Benjamin Smith.

6. Smith Brothers sells in excess of 3,000,000 pounds of Class I milk per month in Order 124 and will be immediately and irreparably impacted if the Final Order announced by the USDA on December 14, 2005 is implemented.

7. The USDA announcement of new regulations for producer-handlers in the proceeding "Milk in the Pacific Northwest and Arizona-Las Vegas Marketing Areas" creates a devastating financial impact on Smith Brothers. The implementation of the rule is causing immediate and irreparable harm.

8. The USDA issued the proposed rule for comment on April 13, 2005. During the time that the proposed rule was under consideration by the USDA, customers, retailers and consumers became aware that Smith Brothers would either have to reduce production to fall below the three million pound cap, or make pool payments that far exceeded the dairy's net income. It was unclear to both management, customers, employees and consumers whether Smith Brothers would be able to survive if the rule was implemented.

9. Initially, Smith Brothers received tremendous support from customers, retailers, employees and consumers. More than 10,000 public comments were made to the Secretary of Agriculture in opposition to the proposed rule. A great many of these comments were submitted by our home delivery customers who spoke enthusiastically about our business model, milk quality, and service. USDA noted in its recent decision that over 95% of the comments received on the issue of regulating producer-handlers opposed changing the rules.

10. Under the USDA rule, Smith Brothers could continue to operate at its current volumes if it paid a compensatory payment into the producer settlement fund. This option is not financially viable, however, because Smith Brothers' cost of production is necessarily high to ensure the quality and taste required by our niche market. Smith Brothers produces milk free of rBST and feeds its cows no byproducts. These practices increase costs of production. The added costs of producer settlement fund payments would price Smith Brothers out of most of our market.

11. Options that are not economically viable for us given our business model include: ███████████████████████████████████████████████████████████████████

12. Possibly, our best option is ████████████████████████████████████████████

13. The core business of Smith Brothers is delivering our own milk to customers throughout the Seattle, Washington area. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ This painful, but dramatic change in our business requires immediate action on the part of Smith Brothers to plan for and begin adjusting our operations.

Page 2 - Affidavit of Scott Highland

14.  ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████

15.  ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████ Absent an injunction, these losses would not be recoverable. ████████████████████████
████████████████████████████████████████████████████
████████████████

16.  ████████████████████████████████████████████████████
████████████████████████████████████ Smith Brothers currently employs about 110 workers directly and 60 independent distributors.

17.  Smith Brothers also sells milk to independent distributors who service retail accounts such as coffee shops, small grocery stores, and convenience stores. ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

18.  In addition to its home delivery customers, Smith Brothers sells milk to ten school districts throughout the Seattle area. Smith Brothers will see that these contracts are fulfilled to their terms. How that is done depends on large part on when relief is granted. An injunction now would provide us greater direction as to how that will be done.

19.  The uncertainty regarding whether the new regulations are actually permitted by Congress also damages Smith Brothers' ability to plan for the future. If the new regulations will take effect February 1, 2006, as we anticipate that they might, we must begin immediately choose the best option and then begin immediately to take steps to accomplish that option which results in the least damage, as all options come with significant costs that we cannot recover. If the option means we can no longer service some of our market we are required, if not by contract, then by common decency to inform those affected. Once turned away, the likelihood that Smith Brothers could recapture these accounts is uncertain. An injunction pending review of the permissibility of the Secretary's actions prevents this irretrievable harm from occurring.

20.  Smith Brothers wants to continue to serve all of our customer base with the high quality milk we have for generations. We want to maintain all of our fine employees who have given so many

Page 3 - Affidavit of Scott Highland

years of service. We want to keep our herd of cows that we have developed over decades. We want to maintain a vital business in Kent and the surrounding area. This is the option that we want to take, and we do not want to lose the right to maintain that option. That is why it is important that we know what lies ahead.

21. Smith Brothers has no viable economic options remaining in order to operate its business in the manner that it has for decades if a court will not step in and maintain the status quo so that the issue of the legal status of producer-handlers that has existed since 1937 can be more thoroughly reviewed.

Executed under penalty of perjury this _____ day of December 2005.


_____
Scott Highland, President
Smith Brothers Farms, Inc.